UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRIAN SPARKS,

                Plaintiff,                Case No. 1:10-cv-581

v.                                                 Honorable Robert J. Jonker

PRISON HEALTH SERVICES, INC. et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Caruso, McKee, Berghuis, Scutt, and Barrett. The Court will serve the complaint against Defendants Prison Health Services, Inc., Correctional Medical Services, Inc., Scott Schooley, Rick Smith, (unknown) Langley, (unknown) Arnett, S. Holmes, (unknown) Totten, and P. Vemuri.

**Discussion**

I. <u>Factual allegations</u>

Plaintiff Brian Sparks presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the G. Robert Cotton Correctional Facility (JCF), though some of his claims arose while he was housed at the Bellamy Creek Correctional Facility (IBC) and the E.C. Brooks Correctional Facility (LRF). Plaintiff sues the following Defendants: Prison Health Services, Inc.; Correctional Medical Services, Inc.; MDOC Director Patricia Caruso; IBC Warden Ken McKee; LRF Warden Mary Berghuis; LRF Deputies Scott Schooley and Rick Smith; JCF Warden D. Scutt; JCF Deputy Warden J. Barrett; JCF Resident Unit Manager (unknown) Langley; JCF Assistant Resident Unit Supervisor (unknown) Arnett; IBC Doctor Scott L. Holmes; LRF Doctor (unknown) Totten; JCF Doctor Padmaja Vemuri, and unnamed IBC medical and custody officers listed as John and Jane Doe.

According to the allegations of the complaint, Plaintiff began experiencing vision problems in 2006. At the time, Plaintiff was housed at IBC. He sought immediate medical attention on June 25, 2006, but apparently was not seen. On April 10, 2007, during a routine checkup, IBC medical staff diagnosed Plaintiff with posterior subcapsular cataracts, a condition that develops at the back of the lens, causing rapid and severe visual impairment. Plaintiff was told that surgery was necessary to correct his vision. Plaintiff alleges, however, that he was not informed that, if left unattended, the condition would lead to blindness. Plaintiff was offered no non-surgical option, and he declined corrective repair until April 2008, when a physician's evaluation indicated that his cataracts had advanced and his vision was deteriorating. Plaintiff's medical file indicated that surgery should be performed first on his right eye and then on his left.

On June 19, 2008, surgery was performed on Plaintiff's right eye, which initially appeared successful. Shortly thereafter, however, Plaintiff developed a film on the replacement lens that clouded Plaintiffs' vision to its original state. Defendants repeatedly denied Plaintiff access to a physician. On July 23, 2008, Defendants denied surgery on the left eye, advising Plaintiff that guidelines limited surgery unless the vision in the best eye is less than 20/40. Plaintiff alleges that he is now completely blind in his left eye and his right eye has been compromised, rendering Plaintiff disabled. On February 9, 2009, Michigan Reformatory Doctor Pragna issued special accommodations effective February 9, 2009 through August 9, 2009, for Plaintiff to receive assistance with meals, a ground floor room, a bottom bunk and assistance with movement inside the institution. When Plaintiff returned to IBC, however, Defendants refused to honor the special accomodations. He was assigned to a second-floor cell, which he alleges compromised his safety and health and caused him panic attacks from having to use the stairs in his housing unit. Plaintiff filed a grievance on March 19, 2009, and he met with the IBC medical respondent on March 30, 2009, who told him that, because he was not totally blind, he could see well enough to be in the unit. On April 6, 2009, Plaintiff submitted a request that Dr. Pandya's accommodations be honored, but he received no response. Plaintiff was advised to request a doctor appointment if he was having vision problems. Plaintiff requested a doctor appointment on April 9, 2009. An appointment was not scheduled for Plaintiff until six months later, in October 2009. When Plaintiff complained about the delay, Defendant Schooley threatened to place Plaintiff in involuntary protective custody because he was "bugging" Schooley. (Compl., ¶ 56.)

On October 6, 2009, he was transferred to JCF, and he received eye surgery on October 7, 2009. On December 21, 2009, Plaintiff sent a health care kite indicating that his right eye

was getting very blurry. On February 9, 2010, he sent another kite, saying his vision was badly impaired. Plaintiff saw JCF Doctor Jane Doe on February 25, 2010, who told Plaintiff that Prisoner Health Services denied his eye surgery in November 2009. On January 21, 2010, Plaintiff went to see Defendant Arnett to talk about problems he was having with other inmates. He told her that he was afraid for his life because his vision was impaired to the point that he could not see people very well. Arnett told Plaintiff to leave her office. On January 27, 2010, as Plaintiff was coming out of the unit, he felt something hit the side of his neck. Plaintiff continued to the dining hall and then returned to his unit. Upon his return, unit staff asked him why his coat was cut on the side of his neck. Plaintiff responded that he had felt something hit him but did not know that his coat was cut. Staff asked if he had seen who had done it, but Plaintiff told them he did not know because he could not see. Staff then placed Plaintiff in protective custody on January 27, 2010. Later that day, Defendants Barrett and Langley asked Plaintiff questions about the stabbing. When Plaintiff explained that he could not see who attacked him, Barrett and Langley told him that they were sending him back to the unit because he had refused to identify his assailant. Plaintiff alleges that he is receiving psychological treatment because of the assault and the vision problems.

Plaintiff alleges that Defendants violated the Fourth, Fourteenth and Eighth Amendments by failing to provide him adequate medical care and demonstrating deliberate indifference to his serious medical needs. He contends that Prison Health Services and Correctional Medical Services denied him adequate medical care. He alleges that Defendant Wardens Berghuis and McKee failed to meet their supervisory responsibility to provide adequate medical care. He alleges that Defendants Caruso, Smith and Schooley failed to ensure that he received adequate medical care, failed to take steps to protect Plaintiff from risks associated with his vision

impairment, and failed to follow established guidelines for care. He alleges that Defendant John Doe IBC custody officer failed to allow him access to medical treatment or to protect him. He further alleges that Defendant Jane or John Doe IBC medical staff failed to provide necessary treatment. In addition, he contends that Defendant JCF Warden Scutt, Deputy Warden Barrett, Resident Unit officers Langley and Arnett, and Doctor Vemuri failed to provide him or ensure that he was provided access to treatment, failed to protect him, failed to follow established guidelines, and failed to ensure his health and safety. Finally, Plaintiff raises a state-law claim of intentional infliction of emotional distress.

  II.  <u>Failure to state a claim</u>

  A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendants Caruso, McKee, Berghuis, Scutt, and Barrett, other than his claim that they had supervisory responsibility to ensure that adequate care was provided within the MDOC and the specific prison facilities. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Caruso, McKee, Berghuis, Scutt, and Barrett engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff's claims against the remaining Defendants shall be served.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Caruso, McKee, Berghuis, Scutt, and Barrett will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Prison Health Services, Inc., Correctional Medical Services, Inc., Scott Schooley, Rick Smith, (unknown) Langley, (unknown) Arnett, S. Holmes, (unknown) Totten, and P. Vemuri. The Court lacks sufficient information at this time to order service against Defendants John and Jane Doe.

An Order consistent with this Opinion will be entered.


Dated:     July 8, 2010            /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   UNITED STATES DISTRICT JUDGE